IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JEFFREY S. MORRILL,

     Plaintiff,

v.                                  CASE NO. 5:15-cv-324-WTH-GRJ

HOLMES COUNTY, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is ECF No. 39, Defendant Holmes County,

Florida's Motion to Dismiss. Plaintiff has filed a response in opposition to

the motion. (ECF Nos. 80, 95.) The motion is, therefore, ripe for review.

For the following reasons, it is recommended that the motion to dismiss be

granted in part and denied in part.

## I.  INTRODUCTION

Plaintiff, a prisoner currently in the custody of the Florida Department

of Corrections at Columbia Correctional Institution, initiated this case on

December 4, 2015, by filing a *pro se* complaint under 42 U.S.C. § 1983.

(ECF No. 1.) Plaintiff filed a second amended complaint on April 13, 2016,

in which he claims that Defendants violated his Eighth and Fourteenth

Amendment rights, were negligent, committed medical malpractice, and intentionally inflicted emotional distress upon Plaintiff. (ECF No. 24.) His claims concern two issues: (1) the mental healthcare, or lack thereof, he received while in custody at the Holmes County Jail; and (2) punishment he endured at Holmes County Jail. As defendants he names: (1) Holmes County, Florida; (2) Doctor's Memorial Hospital; (3) Tim Brown, Sheriff; (4) Lynn Lee, Jail Administrator; and (5) Raina Brown, RN. (*Id.*)

Against Defendant Holmes County, Florida ("Holmes County"), Plaintiff claims Holmes County was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment and denied Plaintiff due process in violation of the Fourteenth Amendment. (*Id.* at 24–25.) Plaintiff further contends that the actions underlying his Eighth and Fourteenth Amendment claims also amount to negligence and intentional infliction of emotional distress under Florida law. (*Id.*)

Holmes County filed a sworn affidavit of Commissioner Danny Powell in support of its motion to dismiss. (ECF No. 39-1 ("Powell Aff.").) Holmes County also later filed a copy of Plaintiff's deposition. (ECF No. 96-1 ("Pl. Dep.").)[1]

---

[1] Along with the copy of Plaintiff's deposition, Holmes County filed a notice directing the Court to three specific references in Plaintiff's testimony. (ECF No. 96.)

Under Fed. R. Civ. P. 12(d), when matters outside the pleadings are presented in support of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, the motion must be treated as one for summary judgment under Fed. R. Civ. P. 56. Rule 56(c) of the Federal Rules of Civil Procedure provides:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Where a matter must be supported or evidenced by a sworn declaration or affidavit, the matter may be supported or evidenced by an unsworn declaration which is subscribed as true under penalty of perjury and dated. 28 U.S.C. § 1746.

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required

---

Because it is the proponent's burden to demonstrate that there is no genuine issue of material fact, the Court declines to search through the entire deposition transcript to ascertain relevant facts other than the three specific references Holmes County makes in its notice. *See Street v. J.C. Brandford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

by Rule 56(c), the court may: (1) give an opportunity to properly
support or address the fact; (2) consider the fact undisputed for
purposes of the motion; (3) grant summary judgment if the
motion and supporting materials—including the facts
considered undisputed—show that the movant is entitled to it;
or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

Plaintiff first filed an unsworn response to the motion to dismiss.
(ECF No. 80.) The response was not submitted under penalty of perjury.
(*Id.*) Because Defendant's motion relies upon matters outside of the
pleadings, the Court then issued a summary judgment notice on January
30, 2017. (ECF No. 89.) The notice advised Plaintiff that because the Court
will consider the matter as a summary judgment motion, Plaintiff was
required to file any supporting evidentiary materials, such as counter-
affidavits, depositions, and exhibits, within twenty-one days, and was
informed that he may not rely solely on the allegations of the issue
pleadings in opposing the summary judgment motion. (*Id.*) Plaintiff then
filed a timely addendum in opposition to the motion for summary judgment.
(ECF No. 30.)

Nonetheless, Plaintiff's addendum also was not submitted under
penalty of perjury. Accordingly, neither the allegations in Plaintiff's unsworn

response or the addendum may be considered as evidence when ruling on the motion for summary judgment. *See McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (litigant's unsworn allegations were not admissible on motion for summary judgment where litigant did not attempt to make the declarations under penalty of perjury).

Plaintiff's second amended complaint, however, was signed under penalty of perjury and is therefore treated by the Court like a sworn affidavit. *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary."). Accordingly, the sworn allegations in Plaintiff's second amended complaint may be considered in ruling on the motion for summary judgment.

## II.  EVIDENCE

Plaintiff was booked into the Holmes County Jail ("the Jail") on October 16, 2013. (ECF No. 24 at 7 ("Compl.").) He was placed in a suicide watch cell because the arresting officers believed Plaintiff was suicidal and would be having drug withdrawals. (*Id.*) He was released into general population one week later without being evaluated or treated for

depression or methamphetamine withdrawal. (*Id.* at 7–8.)

After returning to the Jail from a court appearance on June 11, 2014, Plaintiff sought help for stress, anxiety, and depression from the Jail's registered nurse, Raina Brown ("Nurse Brown"). (*Id.*) Nurse Brown is employed part-time and is the only in-house medical professional at the Jail. (*Id.*)

Plaintiff asked Nurse Brown to let him speak with a mental health professional. (*Id.* at 8.) Nurse Brown told Plaintiff it was the Jail's policy to not provide medications to inmates unless the inmate had been receiving the medication at the time of arrest. (*Id.*) Nurse Brown informed Plaintiff that the policy was in place because people go to jail and then try to get on medications they do not need, which is expensive for the Jail. (*Id.*) Nonetheless, Nurse Brown told Plaintiff that she could give him Viserill pills and that she would schedule an appointment with a mental healthcare provider. (*Id.*) Nurse Brown, however, never made the mental health appointment for Plaintiff. (*Id.*)

That night, Plaintiff attempted suicide with a razorblade. (*Id.* at 9.) His attempt was unsuccessful leaving him in severe pain and suffering from stomach cramps, diarrhea, and vomiting. (*Id.*) The only staff on duty at the

time were two officers—neither of which was a medical professional. (*Id.*)

One of the officers found Plaintiff on the cell floor and called an

ambulance. (*Id.*)

Plaintiff was taken to Doctor's Memorial Hospital ("DMH") for stitches

and a blood transfusion. (*Id.*) DMH is employed as the medical provider for

the Jail and provides medical service to the Jail's inmates on a regular

basis. (*Id.* at 7.) DMH staff was informed that Plaintiff's injuries were self-

inflicted. (*Id.* at 9.) Nonetheless, no one evaluated or treated Plaintiff for

mental health issues, nor did they refer him to a mental health

professional. (*Id.*)

While Plaintiff was being treated at DMH, the Sheriff of the Jail, Tim

Brown ("Sheriff Brown"), and a Lieutenant at the Jail, Lynn Lee ("Lieutenant

Lee"), went to DMH to complete an incident report and take pictures of

Plaintiff's injuries. (*Id.* at 10.) Sheriff Brown is the final policy maker for the

Jail. (*Id.* at 6–7; Pl. Dep. 71:12–19.) Lieutenant Lee is also responsible for

the Jail's policies. (Compl. at 7.)

Plaintiff was returned to the Jail and placed into a suicide watch cell.

(*Id.* at 10.) Despite knowing that Plaintiff was an inmate and that the Jail

did not have mental health staff or 24/7 medical providers, DMH did not

instruct the Jail to have Plaintiff evaluated and treated by a mental health provider. (*Id.*) Plaintiff was eventually released from the suicide watch cell approximately one week later without being evaluated by a mental health provider. (*Id.* at 11.)

Plaintiff was convicted on June 25, 2014. (*Id.*) He attempted suicide again on June 30, 2014, by using broken glass to cut his neck and wrists. (*Id.*) At the time, there was no medical staff on duty at the Jail. (*Id.*) Nonetheless, someone checked Plaintiff's wounds to see whether they were serious. (*Id.*) After a while Plaintiff was transported to DMH for treatment of his wounds. (*Id.*) Despite knowing that Plaintiff's wounds were again self-inflicted, no one at DMH evaluated or treated Plaintiff for depression, nor did DMH refer Plaintiff to a mental health provider or instruct the Jail to refer Plaintiff to a mental health provider. (*Id.* at 12.) Plaintiff says DMH has a custom or policy of ignoring obvious and serious medical needs. (*Id.*)

Within hours, DMH discharged Plaintiff. (*Id.*) Upon return to the Jail, Plaintiff was again placed in a suicide watch cell. (*Id.*) From June 30, 2014, until being transported to prison on July 24, 2014, Plaintiff was also placed

on "punishment loaf,"[2] denied access to showers, a tooth brush, soap, cell sanitation, and stationary to write letters and grievances. (*Id.* at 13.) Plaintiff was not informed why he was being punished, or for how long, nor afforded a disciplinary review hearing. (*Id.* at 13–14.)

On July 16, 2014, after being sentenced to prison, Plaintiff again attempted suicide by hanging. (*Id.* at 14.) Jail officials were not aware of this attempt and did not notice the bruise around Plaintiff's neck. (*Id.*)

Then on July 23, 2014, Plaintiff escaped from Jail. (*Id.*) He was apprehended in nearby woods, naked, covered in mud, and with bruises, cuts, thorns, and bites. (*Id.*) Plaintiff attempted "suicide by cop," hoping that he would be shot. (*Id.*) He was not shot, however, and instead returned to the Jail in pain and limping. (*Id.*) Sheriff Brown and Lieutenant Lee were present and could see that Plaintiff needed medical care but failed to make sure he received treatment. (*Id.*)

Plaintiff was placed into a cell without a mattress, bedding, clothing, or toilet paper. (*Id.* at 15.) The cell was cold and Plaintiff could not sleep due to the cold, lights, and pain from his injuries. (*Id.*) Plaintiff was placed

---

[2] According to Plaintiff, "punishment loaf" is a "horrible tasting blend of foods baked solid and used as punishment." (*Id.* at 13.)

on "punishment loaf" again without having received a disciplinary hearing. (*Id.*) Plaintiff was transported to prison the next day, July 24, 2014. (*Id.*)

After being transferred to prison, Plaintiff was diagnosed as suicidal and suffering from Attention Deficit Hyperactivity Disorder ("ADHD") and Post-Traumatic Stress Disorder ("PTSD"). (*Id.* at 16.) He was placed into a suicide prevention program and treated by qualified personnel for eight months before being released from the program on April 9, 2015. (*Id.*)

Plaintiff says he would not have attempted suicide had qualified mental healthcare been provided to him while in custody at the Jail. (*Id.*) Mental healthcare professionals regularly visited the Jail to speak with inmates who had been receiving mental healthcare prior to arrest. (*Id.* at 13.) In addition, a psychologist held regular anger management classes at the Jail for inmates but Plaintiff was not allowed to speak with the psychologist. (*Id.*)

Plaintiff says Holmes County is responsible for the policies, customs, and regulations of its member parts. (*Id.* at 6.) Thus, according to Plaintiff, Holmes County maintained policies and customs adopted by Sheriff Brown through his official capacity as Sheriff. (*Id.* at 17.) These polices and customs did not serve any legitimate goal or purpose. (*Id.*)

Holmes County was aware of the Jail's policy not to provide mental healthcare to inmates, who were not already receiving mental healthcare prior to arrest. (*Id.*) This policy resulted in severe and painful physical and emotional injuries to Plaintiff. (*Id.*) Plaintiff, however, has not offered any evidence that Holmes County imposed a written or verbal policy limiting his access to mental healthcare. (Pl. Dep. 78:13–17.) He also has no knowledge of any county employee who restricted or limited his access to mental healthcare. (*Id.* 81:10–12, 82:3–7.) Nonetheless, Holmes County knew that Nurse Brown was not a licensed mental health professional nor was she being supervised by one, and that Nurse Brown was nonetheless allowed to determine whether Plaintiff was mentally stable enough to be released from the suicide watch cell. (Compl. at 17.)

Plaintiff further claims Holmes County was aware of the Jail's policy not to provide disciplinary review hearings at which the accused can present evidence and call witnesses prior to being punished. (*Id.* at 18.) This policy resulted in severe emotional distress to Plaintiff. (*Id.*)

Danny Powell, Chairman of the Holmes County Board of County Commissioners, avers that the position of Sheriff of Holmes County is an independent constitutional officer elected by the voters of Holmes County

pursuant to Fla. Stat. § 30.53. (Powell Aff. ¶¶ 3, 5.) According to

Commissioner Powell, the Holmes County Board of County Commissioners

("County Board") does not have, nor does it exercise, any control or power

over the Sheriff or Holmes County Sheriff's Office. (*Id.* ¶ 6.) Instead, the

County Board's powers pertaining to the Sheriff and his office are limited to

the review and approval of the Sheriff's budget as set forth in Fla. Stat. ¶

30.49. (*Id.*)

Commissioner Powell further avers that Sheriff Brown was the chief

correctional officer for the Jail. (*Id.* ¶ 7.)

> [T]he Sheriff is solely responsible for the care, custody and
> control of inmates therein including the daily operations of the
> jail, implementation and adoption of policies, procedures and
> rules governing the care and treatment of inmates, as well as
> all duties to hire, train, [and] terminate his employees within
> both the Sheriff's Office and the Jail.

(*Id.*) The County Board does not have any control over or direct

involvement in the Jail's operations or in the policies and procedures for

the Jail's operations. (*Id.* ¶ 8.) Moreover, the County Board does not have

any control over expenditures by the Sheriff or Holmes County Sheriff's

Office other than approval of the yearly budget as submitted by the Sheriff

pursuant to Fla. Stat. § 30.49. (*Id.*)

## III.  STANDARD OF REVIEW

In accordance with Rule 56(a), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988.) But, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff") "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988) ("The summary judgment standard

requires that we resolve all reasonable doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987.) The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005.)

In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage." *Beard v.*

*Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001.)

## IV. DISCUSSION

Plaintiff claims Holmes County, through Sheriff Brown in his official capacity, maintains policies and customs (1) exhibiting deliberate indifference to the Jail's detainee's and inmates' serious medical needs, and (2) denying detainees procedural due process prior to the imposition of punishment, both of which resulted in the constitutional violations against Plaintiff. He further argues that these policies and customs also constitute negligence and intentional infliction of serious emotional distress under Florida law.

Holmes County says it does not operate, run, or manage the Jail. Instead, Sheriff Brown, over whom Holmes County has no control, and his designees, operate, run and manage the Jail. Because Holmes County does not manage the Jail it says it cannot be liable under § 1983. Holmes County also argues that Plaintiff's state law claims must be dismissed because Plaintiff has failed to satisfy conditions precedent under Fla. Stat.

§ 768.28(6), prior to bringing his claims.

## A.  *Monell* **Claims**

Title 42 U.S.C. § 1983 provides an avenue for redress against any

person acting under color of state law who subjects a person to the

deprivation of any right, privilege, or immunity secured by the Constitution

and laws of the United States. *See Albright v. Oliver*, 510 U.S. 266, 271

(1994) ("Section 1983 is not itself a source of substantive rights, but merely

provides a method for vindicating federal rights elsewhere conferred.").

Municipalities and other local government units are included among those

persons to whom § 1983 applies. *Monell v. Dep't of Soc. Sec. of City of

New York*, 436 U.S. 658, 690 (1978). A local governing body can,

therefore, be sued under § 1983 where "the action that is alleged to be

unconstitutional implements or executes a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's

officers." *Id.* This liability extends to "constitutional deprivations visited

pursuant to governmental 'custom' even though such custom has not

received formal approval through he body's official decisionmaking

channels." *Id.*

"A plaintiff . . . has two methods by which to establish a county's

policy: identify either (1) an officially promulgated county policy or (2) an

unofficial custom or practice of the county shown through the repeated acts

of a final policymaker for the county." *Grech v. Clayton Cnty., Ga.*, 335

F.3d 1326, 1329 (11th Cir. 2003). To establish a county's policy,

> a plaintiff (1) must show that the local governmental entity, here
> the county, has authority and responsibility over the
> governmental function in issue and (2) must identify those
> officials who speak with final policymaking authority for that
> local governmental entity concerning the act alleged to have
> caused the particular constitutional violation in issue.

*Id.* at 1330; *see Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705

n.9 (11th Cir. 1985) (where a governmental entity delegates the final

authority to make decisions, those decisions necessarily represent official

policy).

It is well settled, however, that a municipality cannot be held liable

under § 1983 on a respondeat superior theory, *i.e.*, solely because it

employs a tortfeasor. *Monell*, 436 U.S. at 690; *City of Canton, Ohio v.

Harris*, 489 U.S. 378, 385 (1989). "The 'official policy' requirement was

intended to distinguish acts of the municipality from acts of employees of

the municipality, and thereby make clear that municipal liability is limited to

action for which the municipality is actually responsible." *Pembaur v. City*

*of Cincinnati*, 475 U.S. 469, 479 (1986); *see also Massey v. Montgomery Cnty. Detention Facility*, 646 F. App'x 777, 780 (11th Cir. 2016) (claim against county detention facility's medical provider failed under *Monell* where plaintiff failed to allege that medical provider had a policy or custom that caused deliberate indifference to his serious medical need). Nonetheless, "municipal liability may attach to a single decision made by a municipal official if that municipal official is the final policymaker for the municipality with respect to the subject matter in question." *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989); *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988); *Pembaur*, 475 U.S. at 469).

## 1.    Mental Healthcare

Turning first to Plaintiff's claim that the Jail had a policy of not providing mental healthcare to detainees and inmates unless they were receiving mental healthcare prior to arrest, Plaintiff must prove two things. First, that Holmes County has authority and responsibility over the provision of mental healthcare to the Jail's detainees and inmates. *See Grech*, 335 F.3d at 1330. Second, Plaintiff must show that Sheriff Brown, or any of the other defendants, has final policymaking authority for Holmes

County with respect to provision of mental healthcare to the Jail's

detainees and inmates. *Id.*  The limited argument supporting Holmes

County's motion is that it cannot be held liable for policies at the Jail

because it does not run or supervise the operations of the Jail.  Thus, the

very narrow issue the Court must address at this juncture is whether

Holmes County can be liable under *Monell* even if it does not run or

supervise the Jail operations. The answer to that question is yes, it could

be liable if it delegated responsibility for the Jail operations to a final

decisionmaker.

Assuming there is a policy or custom of denying mental healthcare to

detainees and inmates at the Holmes County Jail, who were not receiving

mental healthcare prior to their arrest—which arguably could raise a

constitutional claim[3]— Holmes County can be liable in two ways. First,

Holmes County can be liable if the County itself has a custom or policy to

---

[3]  Defendant does not raise the issue of whether the denial of mental health treatment violates the Eighth or Fourteenth Amendments and therefore the Court does not address this issue in ruling on the motion for summary judgment. The Court recognizes that the failure to provide mental healthcare might not necessarily be a violation of the Eighth Amendment. *See, e.g.*, *Degraw v. Gualtieri*, No. 8:11-CV-720-EAK-MAP, 2013 WL 6002837, at *6 (M.D. Fla. Nov. 12, 2013) (it was a question for the jury whether jail's policy allowing psychiatric evaluations of psychotic patients to be delayed for up to fourteen days constituted deliberate indifference to plaintiff's serious needs. );

deny mental healthcare to detainees and inmates who were not receiving

mental healthcare prior to their arrest. There is no evidence or argument

this is the claim in this case. Plaintiff admits he has no evidence of any

such policy by Holmes County and Commissioner Powell avers that

Holmes County has no control over care for the Jail's inmates.[4]

Second, Holmes County can be liable if the final policymaker for

Holmes County has a custom or policy to deny mental healthcare to

detainees and inmates who were not receiving mental healthcare prior to

their arrest. More specifically, if Sheriff Brown acts as the final

---

[4] Although Plaintiff filed a copy of a "Contract Between the Holmes County Board of County Commissioners/Holmes County Sheriff's Department and Doctors Memorial Hospital," this contract is neither admissible nor instructive. First, the contract was attached to Plaintiff's unsworn addendum. (ECF No. 95.) Furthermore, the contract does not meet the admissibility requirements for business records under Fed. R. Evid. 803(6) because Plaintiff lacks the requisite personal knowledge to qualify him as a custodian or other qualified witness. In addition, Plaintiff has not properly authenticated the contract under Fed. R. Evid. 901. Notably, although the document is arguably a "public record," it does not reflect that it was recorded or filed in a public office or that it is a purported public record from the office where items of this kind are kept. Second, even if the contract was admissible, it says nothing about providing or not providing mental healthcare. And third, even if the contract was admissible and said something about mental healthcare, the contract apparently ended on September 30, 2013, prior to the time at issue in this case.

Likewise, even though Plaintiff attached to his response a letter from the Holmes County Sheriff's Office stating, "[t]he jails medical provider is not Doctors Memorial Hospital. They are an outside provider contracted through the county," (ECF No. 80 at 8), this letter is neither admissible nor instructive. The letter was attached to Plaintiff's unsworn response, is hearsay, and is not properly authenticated. Nonetheless, even if admissible, the letter mentions nothing about mental healthcare.

decisionmaker with respect to the provision of mental healthcare to detainees and inmates, and if Holmes County delegated that responsibility to Sheriff Brown, Holmes County can be liable.

The parties agree that Sheriff Brown was the final decisionmaker *for the Jail*. (Compl. at 6–7; Pl. Dep. 71:12–19; Powell Aff. ¶ 7.) But, "[a] sheriff's policy or act cannot be said to speak for the county if the county has no say in what policy or action the sheriff takes." *Grech*, 335 F.3d at 1331. The parties dispute, however, whether Sheriff Brown was the final policymaker *for the County* with respect to the provision of mental healthcare to the Jail's detainees and inmates. Holmes County says it does not control Sheriff Brown's decisions and, therefore, that it cannot as a matter of law be liable for any decisions he makes. That assertion is incorrect. Holmes County can be liable for Sheriff Brown's decisions regarding mental healthcare if Sheriff Brown acted as the final policymaker for Holmes County with respect to mental healthcare for detainees and inmates at the Jail.

The question of whether an official has final policymaking authority is a question of state law. *Mandel v. Doe*, 888 F.2d 783, 792 (11th Cir. 1989) (citing *Praprotnik*, 485 U.S. at 124; *see also Jett*, 491 U.S. at 737 ("the

identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury"). The Florida Constitution labels a sheriff as a county officer. Fla. Const. art. VIII, § 1. But, state law cannot answer this question by simply labeling an official as a county or state official. *Grech*, 335 F.3d at 1330 (citing *McMillian v. Monroe Cnty.*, 520 U.S. 781, 786 (1997)). Instead, the proper inquiry is control over the official with respect to the function at issue. *Id.*

Florida sheriffs are independently elected officials by electors of each county. Fla. Const. art. VIII § 1(d); *Abusaid v. Hillsborough Cnty. Bd. of Cnty. Comm'rs*, 405 F.3d 1298, 1305 (11th Cir. 2005). The Florida Constitution, however, also " allows counties to adopt alternative means of selecting sheriffs (or other county officers) if they choose." *Abusaid*, 405 F.3d at 1305 (citing Fla. Const. art. VIII § 1(d)). Moreover, counties may abolish the office of the sheriff altogether, provided its duties are transferred to another office. Fla. Const. art. VIII § 1(d). This "strongly suggests that the state has relinquished to the counties substantial control over the office of the sheriff," and demonstrates that counties "retain substantial discretion in determining which county office or official will

actually be assigned these duties. *Abusaid*, 405 F.3d at 1306, 1310.

Nonetheless, "[i]f a county elects to retain the office of the sheriff, it has

substantial discretion over how to utilize that office." *Id.* at 1306. These

factors suggest that Holmes County may have delegated duties regarding

day-to-day operations, including the provision of mental healthcare, to

Sheriff Brown.

Furthermore, "[u]pon adoption of an ordinance by a majority of the

county commission, the sheriff may be designated chief correctional officer

of the county correctional system . . . ." Fla. Stat. § 951.061(1); *Jones ex*

*rel. Albert v. Lamberti*, No. 07-60839-CIV, 2008 WL 4070293, at *4 (S.D.

Fla. Aug. 28, 2008) (acknowledging that Florida law expressly authorizes a

county to delegate jail operations to the county sheriff). "If designated, the

sheriff and his . . . designee shall enforce all existing state law concerning

the operation and maintenance of county jails." § 951.061(2). Notably,

Commissioner Powell attests that Sheriff Brown is the chief correctional

officer for the Jail, thus, suggesting that Sheriff Brown was designated this

responsibility. If a delegations was made to Sheriff Brown under § 951.061

it would suggest that (1) Sheriff Brown represents Holmes County in regard

to jail operations, and (2) Sheriff Brown acts as the final policymaker for the

County with respect to jail operations. *See Parilla*, 2005 WL3288760, at *9 (concluding that § 951.061 "strongly suggests that, at least in regard to jail operations, a Florida sheriff acts as a county decisionmaker, and his decisions therefore establish the County's policy for purposes of Section 1983").[5]

With respect to funding, the sheriff's budget is funded by county taxes, to be paid out by the county as provided in Fla. Stat. § 30.50. *Abusaid*, 405 F.3d at 1310. Each year, the sheriff must "prepare and submit to the board of county commissioners a proposed budget for carrying out the powers, duties, and operations of the office for the next fiscal year." Fla. Stat. § 30.49(1). "The proposed budget must show the estimated amounts of all proposed expenditures for operating and equipping the sheriff's office and jail," with expenditures categorized into three functional categories: (1) general law enforcement; (2) corrections and detention alternative facilities; and (3) court services, excluding service of process. § 30.49(2)(a). Although the county has no say as to the specific

---

[5] Similarly, the Eleventh Circuit has found a Florida sheriff to be a county official acting on behalf of the county he or she serves, not an arm of the state, for Eleventh Amendment immunity purposes. *Abusaid*, 405 F.3d at 1304; *Schmelz v. Monroe Cnty.*, 954 F.2d 1540, 1543 (11th Cir. 1992); *Hufford v. Rodgers*, 912 F.2d 1338, 1341–42 (11th Cir. 1990).

line item expenditures of a sheriff, the county nonetheless retains the power to determine the sheriff's overall budget. § 30.49. Although the County's funding in and of itself is insufficient to demonstrate that Sheriff Brown was acting as the final policymaker for the County, the County's ability to determine the Sheriff's overall budget further suggests the County retains some control over inmate healthcare, especially where the allegation is that the policy not to provide mental healthcare was established to save money. *See McMillian*, 520 at 791–92 (noting that Alabama county commissions' discretion under state law to deny funds to sheriffs for their operations beyond what is reasonably necessary allows the commission "to exert an attenuated and indirect influence over the sheriff's operations").

Although Holmes County argues that Sheriff Brown is a constitutionally independent officer under Fla. Stat. § 30.53,[6] that independence only applies to certain functions and is insufficient to demonstrate that a sheriff acts independent of the county he serves. *See*

---

[6] Fla. Stat. § 30.53 provides: "The independence of the sheriffs shall be preserved concerning the purchase of supplies and equipment, selection of personnel, and the hiring, firing, and setting salaries of such personnel." *See Aubsaid*, 405 F.3d at 1307; *Troupe v. Sarasota Cnty., Fla.*, No. 8:02-cv-53-T-24MAP, 2004 WL 5572030, at *12 (M.D. Fla. Jan. 22, 2004), *aff'd on other grounds*, 419 F.3d 1160 (11th Cir. 2005).

*Parilla v. Eslinger*, No. 6:05-CV-850-ORL, 2005 WL 3288760, at *9 (M.D.
Fla. Dec. 5, 2005) (county's assertion that "under Florida's statutory
framework, the Sheriff is a Constitutionally independent officer who acts
independent of the County" was insufficient to demonstrate the sheriff did
not act as a policymaker for the county). Moreover, Florida does not have a
constitutional or statutory provision which provides that a sheriff acts as an
arm of the executive department. *Cf. McMillian*, 520 U.S. at 1738 (an
Alabama constitutional provision stating that "[t]he executive department
shall consist of . . . a sheriff for each county" demonstrates in Alabama a
sheriff acts as a policymaker for the state and not the county).

Holmes County argues that, "[a] sheriff's policy or act cannot be said
to speak for the county if the county has no say in what policy or action the
sheriff takes." (ECF No. 39 at 7) (quoting *Troupe v. Sarasota Cnty., Fla.*,
No. 8:02-cv-53-T-24MAP, 2004 WL 5572030, at *11 (M.D. Fla. Jan. 22,
2004), *aff'd on other grounds*, 419 F.3d 1160 (11th Cir. 2005)). This
argument misses the point, however, because the focus is not on whether
Holmes County has input to Sheriff Brown's policies. Instead, the focus is
on whether the County has authority and control over the governmental

function at issue. *Troupe* concluded that Sarasota County did not have authority or control over the county sheriff's law enforcement function because the sheriff was acting for the state in enforcing laws. 2004 WL 5572030, at *13. Indeed, this Court also recently concluded that a county had no liability for claims that the county did not supervise and monitor sheriff's deputies who failed to enforce ordinances because the sheriff was acting for the state in making law enforcement decisions. *See Washington v. Washington*, No. 4:15cv114-RH/CAS, 2015 WL 9918155, at *4 (N.D. Fla. Nov. 24, 2015). But in determining which governmental actors speak with final authority the court must focus its attention on the particular area or issue for which the government is alleged to be the final policymaker. *Turquitt v. Jefferson Cnty., Ala.*, 137 F.3d 1285, 1287 (11th Cir. 1998). Unlike *Troupe* and *Washington*, where the function at issue was law enforcement decisions, the function at issue here is the provision of mental healthcare for detainees and inmates.

Holmes County points to *Jones ex rel. Albert v. Lamberti*, which held that when supervising inmates and operating the jails, the sheriff as chief correctional officer was acting as a state, not county, officer. *See* No. 07-

60839-CIV, 2008 WL 4070293, at *4 (S.D. Fla. Aug. 28, 2008). The Court, is not bound by *Lamberti*, however, nor does the Court find *Lamberti* to be persuasive.

*Lamberti* points to Fla. Stat. § 30.15, which lists sheriffs' powers, duties, and obligations, but fails to recognize that § 30.15 does not include a provision related to operating the day-to-day operations of a county jail or the provision of healthcare to inmates. *Id.* at *3. After citing various statutes governing sheriffs' compensation and budgets—which this Court agrees are insufficient to find that a county has control over the sheriff that services that county— *Lamberti* next acknowledged that Florida law expressly authorizes a county to delegate jail operations to the sheriff under § 951.061(1). *Id.* at *3–4. *Lamberti* fails to explain, however, how this factor supports the conclusion that the county sheriff was not operating as the final policymaker for the county. To the contrary, as previously discussed, by delegating the jail operations to a sheriff as chief correctional officer, the county is delegating final policymaking authority to that sheriff, thereby subjecting the county to § 1983 liability.

Finally, citing *Weitzenfeld v. Dierks*, 312 So. 2d 194 (Fla. 1975),

*Lamberti* concluded that the county did not have any supervisory control over the sheriff because the internal operation of the sheriff's office is a function that belongs to the sheriff. *Id.* at *4. In *Weitzenfeld*, the Florida Supreme Court found "the internal operations of the sheriff's office and the allocation of appropriated monies within the six items of the budget [to be] a function which belongs uniquely to the sheriff as the chief law enforcement officer of the county." 312 So. 2d at 196. The issue in *Weitzenfeld*, however, involved whether a county had authority under Fla. Stat. § 30.49(4) to determine utilization of monies once allocated under § 30.49(2). *Id.* at 195. *Weitzenfeld* did not discuss the county's discretion to abolish the office of the sheriff altogether and assign the sheriff's functions to another office. *See* Fla. Const. art. VIII § 1(d). Nor did *Weitzenfeld* conclude that the sheriff does not act as final policymaker on behalf of the county for decisions relating to the internal operations of the jail. This Court, therefore, also finds *Weitzenfeld* unpersuasive on the issue before this Court.

Holmes County says it has no control over Sheriff Brown and that Sheriff Brown is solely responsible for the care of inmates. But as

discussed, Florida law suggests that a sheriff acts for the county with respect to the daily operations of the county jail. And if Sheriff Brown was in fact the final policymaker with respect to decisions pertaining to mental healthcare, Holmes County can be liable upon the finding of a constitutional violation.[7] At this juncture however, the Court need not determine whether Sheriff Brown is in fact the final policymaker for the County because the County only argues that it cannot be liable because it does not control the operations of the Jail or Sheriff Brown. That does not end the *Monell* inquiry.

Notably, Holmes County fails to offer any argument on the merits of Plaintiff's deliberate indifference claim. As discussed, the record before this

---

[7] Even if the evidence eventually reveals that Sheriff Brown is not the final policymaker acting on behalf of the County with respect to mental healthcare decisions, that does not necessarily absolve Holmes County of liability. For example, Florida law provides that "the governing body of the county may enter into a contract with a private entity for the provision of the operation and maintenance of a county detention facility . . . and the supervision of county prisoners." Fla. Stat. § 951.062(1). "When a county enters into a contract for the operation and maintenance of county detention facilities, the sheriff of such county shall cease to be liable for actions arising out of the operation and maintenance of the facilities under contract, except as to any acts he or she commits personally." § 951.062(9); *see also Ancata*, 769 F.2d at 705 (county's choice to contract with private entity to provide medical care to incarcerated individuals neither absolves the county of its duty to provide medical care nor absolves the county of liability for any constitutional deprivations caused by the contractor's policies or customs); *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996) (police chief's actions could not render the city liable because police chief was not the final policymaking authority with respect to the actions taken against plaintiff).

Court and the relevant law demonstrates that the County could be liable for deliberate indifference to Plaintiff's serious medical needs. *See Mandel*, 888 F.2d at 794 (physician's assistant's acts of deliberate indifference could be attributed to the county because county had delegated him final policymaking authority with respect to medical affairs at county prison).

In sum, Holmes County has not demonstrated the absence of a genuine dispute of a material fact as to whether Sheriff Brown acts as the final policymaker for the County concerning decisions and policies regarding the provision of mental healthcare for detainees and inmates of the County Jail. And because Holmes County does not make any argument that the policy does not constitute a constitutional violation Holmes County's motion with respect to Plaintiff's deliberate indifference claim should be denied.

## 2.    Disciplinary Hearings

Turning next to Plaintiff's *Monell* claim against Holmes County regarding Plaintiff's claim that Holmes County has a policy of not providing disciplinary hearings prior to imposing punishment on detainees, Plaintiff must prove two things. First, that Holmes County has authority and

responsibility over disciplining detainees. *See Grech*, 335 F.3d at 1330. And second, that Sheriff Brown, or any of the other defendants, has final policymaking authority for Holmes County with respect to disciplining detainees. *Id.*

Holmes County contends it cannot be liable because it does not control the procedures or operations of the Jail, nor does the County control Sheriff Brown with respect to the care, custody, or control of inmates. As explained above this is insufficient to demonstrate that Holmes County is entitled to judgment as a matter of law on a *Monell* claim. Although Holmes County may not have any direct control over disciplining detainees, if Holmes County delegated that responsibility to Sheriff Brown, and if Sheriff Brown was the final policymaker with respect to the discipline of detainees, Holmes County could be liable. There is no evidence before the Court, however, permitting resolution of this issue.

Furthermore, Holmes County offers no argument or evidence regarding the merits of Plaintiff's due process claim. Because it is possible that Sheriff Brown acts as the final policymaker for Holmes County with respect to disciplining detainees and because it is premature to determine

whether Sheriff Brown has a custom or policy that denied Plaintiff due process, Holmes County's motion for summary judgment on Plaintiff's due process claim also should be denied.

## B.  State Law Claims

Plaintiff also brings negligence and intentional infliction of emotional distress claims against Holmes County in relation to the allegations giving rise to the constitutional claims.

Generally, Florida waives sovereign immunity for liability for torts for the state, its agencies, and subdivisions. *See* Fla. Stat. § 768.28(1) (2014).[8] But, an action may not be instituted on a claim against a subdivision of the state unless the claimant presents the claim in writing to the appropriate subdivision, and also presents the claim in writing to the Florida Department of Financial Services ("FDFS") within 3 years after such claim accrues and the FDFS or the subdivision denies the claim in writing. § 768.28(6)(a).[9] The notice requirement and denial of claim are

---

[8] "When determining whether there has been a waiver of sovereign immunity, the courts should look at the immunity provisions in effect at the time the cause of action accrued." *Hattaway v. McMillian*, 903 F.2d 1440, 1444 n.3 (11th Cir. 1990).

[9] Although two exceptions to this rule exist, neither appear to be applicable in this case. *See* § 768.28(6)(a)(1)–(2).

conditions precedent to maintaining an action. § 768.28(6)(b).

The plaintiff's complaint must also contain an allegation that such notice was given. *Schaeffer v. School Bd. of Broward Cnty., Fla.*, 69 F. Supp. 3d 1327, 1329 (S.D. Fla. 2014). "A complaint that is brought without first providing statutory notice must be dismissed with leave for plaintiff to amend his complaint to allege compliance with the notice requirement." *Fletcher v. City of Miami*, 567 F. Supp. 2d 1389, 1393 (S.D. Fla. 2008); *Villa Maria Nursing & Rehab. Ctr., Inc. v. S. Broward Hosp. Dist.*, 8 So. 3d 1167, 1172 (Fla. Dist. Ct. App. 2009) (holding that case should have been dismissed without prejudice because at the time of dismissal the applicable limitations to provide notice had not expired). Prior notice, however, has not been strictly required where notice was given to governmental agencies subsequent to the filing of the lawsuit but within the statute of limitations. *See Lee v. S. Broward Hosp. Dist.*, 473 So. 2d 1322, 1324 (Fla. Dist. Ct. App. 1985). "However in instances, 'where the time for such notice has expired so that it is apparent that the plaintiff cannot fulfill the requirement, the trial court has no alternative but to dismiss the complaint with prejudice.'" *Fletcher*, 567 F. Supp. 2d at 1393 (quoting *Wagatha v.*

*City of Satellite Beach*, 865 So. 2d 620, 622 (Fla. Dist. Ct. App. 2003)).

In this case, the only evidence before the Court demonstrating whether Plaintiff complied with the notice requirement mandated by § 768.28(6) is Plaintiff's complaint, which is devoid of any suggestion he complied with the notice provision. Plaintiff does allege in his unsworn response to Holmes County's motion, that he "did send pre-suit notices to all Defendants with all required information with the exception of the experts opinion, which Plaintiff could not obtain being a prisoner." (ECF No. 80 at 2.) While it is unclear why Plaintiff needed to send an expert opinion, Plaintiff's allegations in an unsworn complaint cannot be considered as evidence in ruling on a motion for summary judgment. Similarly, Holmes County says Plaintiff has not presented a notice to either Holmes County or the FDFS. (ECF No. 39 at 12.) But Holmes County has presented no evidence to support this allegation.[10]

Nonetheless, there is no dispute that Plaintiff's complaint does not

---

[10] Although Holmes County filed the affidavit of Commissioner Powell, Commissioner Powell makes no statements regarding the pre-suit notice requirements. Furthermore, although Plaintiff references the pre-suit notice during his deposition, his testimony fails to clarify whether he did in fact comply with the notice requirement. *See* Pl. Dep. 43:2–11.

contain the requisite allegation that notice was given. Furthermore, Plaintiff

has failed to produce evidence establishing that he has in fact filed the

requisite notice. The undisputed evidence therefore demonstrates that

Plaintiff's state law claims against Holmes County are due to be dismissed.

However, because the three-year period in which to file the requisite notice

has not yet expired, the dismissal should be without prejudice.

## V.  RECOMMENDATION

Accordingly, it is respectfully **RECOMMENDED** that:

Defendant Holmes County Florida's Motion to Dismiss, construed as
a motion for summary judgment, ECF No. 39, should be **GRANTED
in part and DENIED in part.**

**IN CHAMBERS** this 10th day of March, 2017.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed
within fourteen (14) days after being served a copy thereof. Any different
deadline that may appear on the electronic docket is for the court's internal
use only, and does not control. A copy of objections shall be served upon
all other parties. If a party fails to object to the magistrate judge's findings

or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.