IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JEFFREY S. MORRILL,

    Plaintiff,

v.                                      CASE NO. 5:15-cv-324-WTH-GRJ

HOLMES COUNTY, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is ECF No. 61, Defendant Doctors Memorial Hospital's Motion to Dismiss. Plaintiff has filed a response in opposition to the motion. (ECF No. 68.) The motion is, therefore, ripe for review. For the following reasons, it is recommended that the motion to dismiss be granted in part and denied in part.

### I.  INTRODUCTION

Plaintiff, a prisoner currently in the custody of the Florida Department of Corrections at Columbia Correctional Institution, initiated this case on December 4, 2015, by filing a *pro se* complaint under 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff subsequently filed a second amended complaint on April 13, 2016, in which he claims that Defendants violated his Eighth and

Fourteenth Amendment rights, were negligent, committed medical malpractice, and intentionally inflicted emotional distress upon Plaintiff. (ECF No. 24.) His claims concern two issues: (1) the mental healthcare, or lack thereof, he received while in custody at the Holmes County Jail; and (2) punishment he endured at Holmes County Jail. As Defendants he names the following: (1) Holmes County, Florida; (2) Doctor's Memorial Hospital; (3) Tim Brown, Sheriff; (4) Lynn Lee, Jail Administrator; and (5) Raina Brown, RN. (*Id.*)

With respect to Defendant Doctors Memorial Hospital ("the Hospital"), Plaintiff claims the Hospital was deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments. (*Id.* at 18–19.) Plaintiff further contends that the actions underlying his Eighth and Fourteenth Amendment claims against the Hospital also amount to negligence and medical malpractice under Florida law. (*Id.*) As relief, Plaintiff seeks declaratory relief, and compensatory and punitive damages. (*Id.* at 22–24.)

## II.  ALLEGATIONS

Plaintiff was booked into the Holmes County Jail ("the Jail") on October 16, 2013. (ECF No. 24 at 7.) He was placed in a suicide watch cell

because the arresting officers believed Plaintiff was suicidal and would be having drug withdrawals. (*Id.*) He was released into general population one week later without being evaluated or treated for depression or methamphetamine withdrawal. (*Id.* at 7–8.)

After returning to the Jail from a court appearance on June 11, 2014, Plaintiff sought help for stress, anxiety, and depression from the Jail's registered nurse, Raina Brown ("Nurse Brown"). (*Id.*) Nurse Brown is employed part-time and is the only in-house medical professional at the Jail. (*Id.*)

Plaintiff asked Nurse Brown to let him speak with a mental health professional. (*Id.* at 8.) Nurse Brown told Plaintiff it was the Jail's policy to not provide medications to inmates unless the inmate had been receiving the medication at the time of arrest. (*Id.*) Nurse Brown informed Plaintiff that the policy was in place because people go to jail and then try to get on medications they do not need, which is expensive for the Jail. (*Id.*) Nonetheless, Nurse Brown told Plaintiff that she could give him Viserill pills and that she would schedule an appointment with a mental healthcare provider. (*Id.*) Nurse Brown, however, never made the mental health appointment for Plaintiff. (*Id.*)

That night, Plaintiff attempted suicide with a razorblade. (*Id.* at 9.) His attempt was unsuccessful however, leaving him in severe pain and suffering from stomach cramps, diarrhea, and vomiting. (*Id.*) The only staff on duty at the time were two officers—neither of which was a medical professional. (*Id.*) One of the officers found Plaintiff on the cell floor and called an ambulance. (*Id.*)

Plaintiff was taken to the Hospital for stitches and a blood transfusion. (*Id.*) The Hospital is employed as the medical provider for the Jail, either through formal contract or an accepted custom and policy, and provides medical service to the Jail's inmates on a regular basis. (*Id.* at 7, 19.) The Hospital staff was informed that Plaintiff's injuries were self-inflicted. (*Id.* at 9.) Nonetheless, no one evaluated or treated Plaintiff for mental health issues, nor did they refer him to a mental health professional. (*Id.*)

Plaintiff was returned to the Jail and placed into a suicide watch cell. (*Id.* at 10.) Despite knowing that Plaintiff was an inmate and that the Jail did not have mental health staff or 24/7 medical providers, the Hospital did not instruct the Jail to have Plaintiff evaluated and treated by a mental health provider. (*Id.*) Plaintiff was eventually released from the suicide

watch cell approximately one week later without being evaluated by a mental health provider. (*Id.* at 11.)

Plaintiff was convicted on June 25, 2014. (*Id.*) He attempted suicide again on June 30, 2014, by using broken glass to cut his neck and wrists. (*Id.*) At the time, there was no medical staff on duty at the Jail. (*Id.*) Nonetheless, someone checked Plaintiff's wounds to see how serious they were. (*Id.*) After a while, Plaintiff was transported to the Hospital to have his wounds attended to. (*Id.*) Despite knowing that Plaintiff's wounds were again self-inflicted, no one at the Hospital evaluated or treated Plaintiff for depression, nor did the Hospital refer Plaintiff to a mental health provider or instruct the Jail to refer Plaintiff to a mental health provider. (*Id.* at 12.) Plaintiff says the Hospital has a custom or policy of ignoring obvious and serious medical needs. (*Id.*)

Within hours, the Hospital discharged Plaintiff. (*Id.*) Upon return to the Jail, Plaintiff was again placed in a suicide watch cell. (*Id.*) On July 16, 2014, after being sentenced to prison, Plaintiff again attempted suicide by hanging. (*Id.* at 14.) Jail officials were not aware of this attempt and did not notice the bruise around Plaintiff's neck. (*Id.*)

Then on July 23, 2014, Plaintiff escaped from Jail. (*Id.*) He was

apprehended in nearby woods, naked, covered in mud, and with bruises, cuts, thorns, and bites. (*Id.*) Plaintiff attempted "suicide by cop," hoping that he would be shot. (*Id.*) He was not shot, however, and instead returned to the Jail in pain and limping. (*Id.*)

After being transferred to prison on July 24, 2014, Plaintiff was found to be suicidal and suffering from Attention Deficit Hyperactivity Disorder ("ADHD") and Post-Traumatic Stress Disorder ("PTSD"). (*Id.* at 16.) He was placed into a suicide prevention program and treated by qualified personnel for eight months before being released from the program on April 9, 2015. (*Id.*)

Plaintiff alleges he would not have attempted suicide had qualified mental healthcare been provided to him while in custody at the Jail. (*Id.*) Mental healthcare professionals regularly visited the Jail to speak with inmates who had been receiving mental healthcare prior to arrest. (*Id.* at 13.) In addition, a psychologist held regular anger management classes at the Jail for inmates but Plaintiff was not allowed to speak with the psychologist. (*Id.*)

### III.  STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A, the court "shall review . . . a

complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and shall "dismiss the complaint . . . if the complaint . . . fails to state a claim upon which relief may be granted. To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995).

As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Further, in *Ashcroft v. Iqbal*, 556 U.S. 662, 1951-53 (2009), the Supreme Court stated that *Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line from conceivable to plausible."

While a *pro se* litigant's allegations are entitled to the benefit of liberal construction, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), a court does not have "license . . . to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Invs. v. Cnty of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (overruled on other grounds by *Iqbal*).

## IV. DISCUSSION

The Hospital argues that Plaintiff's state law claims are due to be dismissed for failure to state a claim upon which relief may be granted. (ECF No. 61.) Specifically, the Hospital contends: (1) Plaintiff failed to comply with pre-suit requirements and conditions precedent pursuant to Chapter 766, Fla. Stat., prior to bringing any negligence and/or medical malpractice claims; (2) Plaintiff's state law claims are barred by the statute of limitations; and (3) any declaratory relief is rendered moot by Plaintiff's transfer out of Holmes County.[1]

### 1. State Law Claims

Under Florida law, a "'claim for medical negligence' or 'claim for

---

[1] The Hospital does not argue that Plaintiff's Eighth and Fourteenth Amendment deliberate indifference claims should be dismissed.

medical malpractice' means a claim, arising out of the rendering of, or the failure to render, medical care or services." Fla. Stat. § 766.106(1)(a). A medical malpractice claim requires the wrongful act to be directly related to the improper application of medical services and use of professional judgement or skill. *Quintanilla v. Coral Gables Hosp., Inc.*, 941 So. 2d 468, 469 (Fla. Dist. Ct. App. 2006); *Lake Shore Hosp., Inc. v. Clarke*, 768 So. 2d 1251, 1251–52 (Fla. Dist. Ct. App. 2006) (a medical malpractice or medical negligence claim requires a breach of a professional standard of care); *Puentes v. Tenent Hialeah Healthsystem*, 843 So. 2d 356, 357 (Fla. Dist. Ct. App. 2003) (a medical malpractice claim arises when a plaintiff suffers an injury during the course of treatment for the patient's health).

Prior to filing suit for injury arising out of medical malpractice, a claimant must first conduct an investigation to ensure that there are reasonable grounds to believe (1) any named defendant in the litigation was negligent in the care or treatment of the claimant, and (2) such negligence resulted in injury to the claimant. Fla. Stat. § 766.203(2).

> After completion of presuit investigation pursuant to s. 766.203(2) and prior to filing a complaint for medical negligence, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence. Notice to each prospective defendant must include, if available, a list of all known health

care providers seen by the claimant for the injuries complained of subsequent to the alleged act of negligence, all known health care providers during the 2-year period prior to the alleged act of negligence who treated or evaluated the claimant, copies of all of the medical records relied upon by the expert in signing the affidavit, and the executed authorization form provided in s. 766.1065.

§ 766.106(2)(a). A claimant must also provide a verified written medical expert opinion from a medical expert at the time the notice of intent to initiate litigation is mailed, which shall corroborate reasonable grounds to support the medical malpractice claim. § 766.203(2). A claimant may not file a complaint alleging medical malpractice for a period of ninety (90) days after the presuit notice is mailed to any prospective defendant. § 766.106(3)(a).

> This Court, however, has previously explained:
>
> It is clear that a prisoner can assert a negligence claim against a defendant without complying with the presuit requirements, even when medical care is involved, so long as the claim does not assert medical negligence. *See, e.g.*, *Harris v. Sheriff, Jefferson Cnty. Fla.*, 460 F. App'x 896 (11th Cir.2012) (per curiam) (upholding a county-jail inmate's negligence claim against a sheriff for delay in providing medical care; the plaintiff did not comply with the presuit requirements, and no issue was made of the failure); *Nobles v. Corrections Corp. of America*, No. 4:07cv288, 2008 WL 686962 (N.D.Fla. March 12, 2008) (dismissing a prisoner's medical-negligence claim for failing to comply with the presuit requirements but upholding a claim based on other negligence). In general, a claim asserts medical negligence if the claim will succeed only on a showing that the

> defendant—or a person for whose acts a defendant is vicariously liable—failed to comply with the standard of care applicable to a medical professional of the relevant kind. *See, e.g.*, *Svenningson v. Prison Health Servs., Inc.*, No.6:07cv1716, 2007 WL 3340453, at *2 (M.D.Fla. Nov.9, 2007) (holding the presuit requirements applicable because "the resolution of this case will require the application of the prevailing professional standard of care for a healthcare provider").

*Kellar v. Fla. Dep't of Corrections*, No. 4:14cv84-RH/GRJ, 2015 WL 1296030, at *5 (N.D. Fla. Mar. 22, 2015) (quoting *Jones v. Campbell*, No. 4:12-cv-458-RH-CAS, ECF No. 26 at 4–5 (N.D. Fla. Dec. 20, 2012)). "It is up to the court to decide from the allegations in the complaint whether the claim arises out of the rendering of, or the failure to render, medical care or services." *Smith ex rel Ashley v. Brevard Cnty., Fla.*, 2006 WL 2355583, at *6 (M.D. Fla. Aug. 14, 2006) (quoting *Foshee v. Health Mgmt. Assocs.*, 675 So. 2d 957, 959 (Fla. Dist. Ct. App. 1996)). "The test for determining whether a defendant is entitled to the benefit of the presuit screening requirements of section 766.106 is whether a defendant is liable under the medical negligence standard of care set forth in [Fla. Stat. §] 766.102(1)." *Joseph v. Univ. Behavioral LLC*, 71 So. 3d 913, 917 (Fla. Dist. Ct. App. 2011). Under § 766.102(1),

> the claimant shall have the burden of proving by the greater weight of evidence that the alleged actions of the health care

provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

As an initial matter, Plaintiff has asserted both a negligence claim and a medical malpractice claim against the Hospital. (ECF No. 24 at 19.) To the extent Plaintiff attempts to specifically bring a medical malpractice claim, his claim is due to be dismissed. Plaintiff's complaint fails to allege that he complied with the presuit requirements. Despite the assertion in his response that he sent notice to all defendants and the Department of Financial Services, he nonetheless admits that he failed to provide the requisite expert opinion. (ECF No. 68.) He appears to argue that it was impossible for him to provide an expert opinion because he is incarcerated. But, a pro se prisoner attempting to bring a medical malpractice claim is nonetheless required to mail the prospective defendants a notice of intent to initiate litigation and a medical expert affidavit. *See Gross v. White*, 340 F. App'x 527, 532 (11th Cir. 2009) (district court properly dismissed prisoner's medical negligence claim under Florida law because he did not allege that he mailed those documents or obtained a medical expert

affidavit). Plaintiff's confinement does not excuse him from compliance with Chapter 766.

Nonetheless, Plaintiff's state law claims are more properly construed as ordinary negligence claims. Although Defendant appears to argue that his negligence claim equates to a medical negligence claim subject to the presuit requirements, the Court disagrees. Plaintiff says even though the Hospital knew he had attempted suicide, it failed to provide mental health care evaluation and treatment and did not instruct the Jail to have Plaintiff evaluated or treated by a mental healthcare professional. Plaintiff's claim is not that the Hospital made a medical error, but that, for reasons unrelated to medical judgment or performance, the Hospital consciously chose not to provide the needed care. *See Horst v. Parker*, No. 6:07-cv-612-Orl-19KRS, 2007 WL 4557243, at *3 (M.D. Fla. Dec. 21, 2007) (finding plaintiff's claim to be an ordinary negligence claim because it was based on medical contractor's failure to provide medical care in general, as opposed to plaintiff's prior medical negligence claim based on medical contractor's failure to provide plaintiff his prescribed medications); *cf. Christie v. Lee Cnty. Sheriff's Office*, No. 2:10-CV-420-FtM-36DNF, 2011 WL 4501953, at *5 (M.D. Fla. Sept. 28, 2011 (plaintiff stated a claim for medical negligence

by alleging defendants breached their duty of care by failing and/or refusing to provide access to timely adequate medical and mental health assessment, care, and treatment and/or to address his obvious medical and mental health conditions, *and by also failing and/or refusing to timely provide necessary prescription medication*); *Gullo v. Prison Health Servs., Inc.*, 2007 WL 3340396, at *2 (M.D. Fla. Nov. 9, 2007) (claim that prison's medical contractor negligently supervised its employees where employees failed to provide inmate with his prescribed medication for bipolar disorder required compliance with presuit procedural requirements because resolution of the claim would require the application of the prevailing professional standard of care for a healthcare provider). Although Plaintiff's claim here is related to medical care, it has nothing to do with a decision based on professional judgment.

The Hospital's reliance on *R.W. v. Armor Correctional Health Services, Inc.*, 830 F. Supp. 2d 1295 (M.D. Fla. 2011), is unavailing. In *Armor*, the Middle District explained that courts "have found claims to sound in medical malpractice and held compliance with Chapter 766 pre-suit requirements necessary where the defendant's act or refusal to act was part and parcel of the claimant's overall medical care." 830 F. Supp.

2d at 1303 (citing *Puentes v. Tenet Hialeah Healthsystem*, 843 So. 2d 356 (Fla. Dist. Ct. App. 2003)). The Middle District determined that plaintiff's claims sounded in medical malpractice under Chapter 766 because the defendant "was charged with the decisions involving the care of Plaintiff, including whether or not to dispense the previously prescribed medication to Plaintiff." *Id.*; *see also Puentes*, 843 So. 2d at 358 (finding plaintiff's claim sounded in medical malpractice where claim alleged hospital employees failed to deliver plaintiff the hypoallergenic diet prescribed by plaintiff's doctor because the alleged act or failure to act was an extension of the medical treatment prescribed by a physician). Here, however, Plaintiff's claim is not that the Hospital made a medical error, but that, for reasons unrelated to medical judgment or performance, the Hospital consciously chose not to provide the needed care. *See Kellar*, 2015 WL 1296030, at *5–6 (claim that prison's doctor failed to provide the necessary care was grounded in ordinary negligence, not medical negligence).

Plaintiff has asserted a stand alone claim for negligence under Florida law. That claim is not subject to the presuit requirements under Chapter 766. *See Joseph*, 71 So. 3d at 920 (negligence claim alleging failure to ensure timely and adequate treatment was not barred by the

failure to comply with the medical malpractice presuit requirements).

Furthermore, contrary to the Hospital's assertion, Plaintiff's negligence claim is not barred by the statute of limitations. Fla. Stat. § 95.11(5)(g) provides that "an action brought by or on behalf of a prisoner, as defined in s. 57.085, relating to the conditions of the prisoner's confinement," must be brought within one year.[2] A civil action is barred unless begun within the time period prescribed in chapter 95, or if a different time is prescribed elsewhere in the statutes, within the time prescribed elsewhere. Fla. Stat. § 95.011. At the same time, however, Fla. Stat. § 768.28(14) provides that "[e]very claim against the state or one of its agencies or subdivisions for damages for a negligent or wrongful act or omission pursuant to this section shall be forever barred unless the civil action is commenced by filing a complaint in the court of appropriate jurisdiction within 4 years after such claim accrues . . . ." Thus, the question becomes which statute of limitations applies to Plaintiff's negligence claim.

The Florida Supreme Court recently resolved this issue, holding that

---

[2] Fla. Stat. § 57.085 defines the term "prisoner" as "a person who has been convicted of a crime and is incarcerated for that crime or who is being held in custody pending extradition or sentencing."

where a prisoner alleges he suffered physical injury (as opposed to mental or emotional injury alone) due to the negligent acts or omissions of the employees of a governmental entity, the one-year statute of limitations period under § 95.11(5)(g) does not apply. *Green v. Cottrell*, 204 So. 3d 22, 29 (Fla. 2016). Instead, the four-year statute of limitations in § 768.28(14) governs. *Id.*

Plaintiff claims that the Hospital's negligence resulted in "severe physical and emotional pain and injuries." (ECF No. 24 at 19.) Because he alleges that he suffered physical injury due to the Hospital's negligence, the four-year statute of limitations applies. Plaintiff initiated this action on December 4, 2015, related to injuries suffered while in custody from October 16, 2013, through July 24, 2014. Thus, applying the appropriate statute of limitations for negligence under § 768.28(14), Plaintiff properly initiated his claim within four years after the claim accrued. Accordingly, to the extent the Hospital seeks to dismiss Plaintiff's negligence claim, the Hospital's request is due to be denied.

### 2. Declaratory Relief

As part of his requested relief, Plaintiff seeks a declaratory judgment stating:

> The failure of Defendant Doctor's Memorial Hospital to provide any mental health care, referral for treatment, or instruction to the Jail to provide such care resulted in physical and emotional injuries to Plaintiff and violated the Plaintiff's rights under the Eighth and/or Fourteenth Amendment to the Constitution and constitutes negligence and medical malpractice under state law.

(ECF No. 24 at 22–23.)

As an initial matter, based on the language of the judgement sought, Plaintiff does not appear to seek a "declaratory judgment" in the true meaning of such. Typically, a declaratory judgment either accompanies an injunction, declares a statute unconstitutional, or determines the legal rights or duties of a party. *See* 28 U.S.C. § 2201(a) ("In the case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); Fed. R. Civ. P. 57 advisory committee's note ("A declaratory judgment is appropriate when it will 'terminate the controversy' giving rise to the proceeding. . . . . The 'controversy' must necessary be 'of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts.' . . . . The existence or nonexistence of any right, duty, power, liability, privilege, disability, or

immunity or of any fact upon which such legal relations depend, or of a status, may be declared."); *Poe v. Gerstein*, 417 U.S. 281, 281 (1974) (although district court entered a declaratory judgment holding a Florida statute unconstitutional, court properly declined to issue an injunction against the enforcement of a statute because there was no allegation or proof that respondents would not acquiesce in the decision holding the statute unconstitutional). Here, however, Plaintiff's request appears to merely be one seeking judgment in his favor.

Nonetheless, it is well settled in the Eleventh Circuit that a prisoner's transfer to a different facility will moot his individual claims for injunctive or declaratory relief. *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007); *McKinnon v. Talladega, Cnty., Ala.*, 745 F.2d 1360, 133 (11th Cir. 1984). Plaintiff is no longer confined at the Holmes County Jail and therefore has no further association with the Hospital for medical care. Accordingly, to the extent Plaintiff seeks a "declaratory judgment," his claim should be dismissed as moot.[3]

---

[3] Plaintiff also seeks compensatory and punitive damages from the Hospital, as well as a jury trial. (ECF No. 24 at 24–25.) The transfer of a prisoner to a different facility does not moot a claim for monetary damages. *McKinnon*, 745 F.2d at 1362. Plaintiff may therefore pursue his claims for compensatory and punitive damages.

## V.  RECOMMENDATION

Accordingly, it is respectfully **RECOMMENDED** that:

Defendant Doctors Memorial Hospital's motion to dismiss, ECF No. 61, should be **GRANTED in part and DENIED in part.**

**IN CHAMBERS** this 23rd  day of March, 2017.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**